## UNITED STATES HOFFMAN MACHINERY CORPORATION v. CUMMINGS-LANDAU LAUNDRY MACHINERY CO., Inc.

### No. 8267.

District Court, E. D. New York.

Dec. 8, 1939.

Blair, Curtis, Dunne & Hayward, of New York City (Daniel L. Morris, Edward G. Curtis, and Charles C. Ladd, all of New York City, of counsel), for plaintiff.

Morrison, Kennedy & Campbell, of New York City (Clarence B. Des Jardins, of Washington, D. C., and Arnold S. Worfolk, of New York City, of counsel), for defendant.

BYERS, District Judge.

This cause is the usual one in equity for patent infringement, according to bill of complaint filed on March 31, 1937. It came to. final hearing in June of 1939, and argument and submission were had on October 26, 1939.

The plaintiff is a Delaware corporation and owns the United States patent in suit, issued to Hubert J. M. C. Krantz on August 6, 1929, on application filed October 16, 1926, which bears the number 1,723,-940.

The patent has to do with a particular form of centrifugal drying machine, and the patentable invention is said to reside in such a novel association of mechanical elements none of which was new, that a desired and beneficial result was brought about; so far as the evidence discloses, that result had not been attained by earlier devices of the same general character.

The exterior appearance of plaintiff's machine—called the Amico—is that of a circular metal body, like a section of a cylinder, of from 4 to 7 feet in diameter and about 4 feet in height, resting upon a floor of the building in which the drying is done. The top may be easily opened for access to the interior of the drying element, and when the latter, which is the

container of fabrics to be dried, is rotated, at about 750 R.P.M., the resulting vibrations are absorbed almost completely or dissipated within the entire structure, instead of being communicated to the floors and other elements of the said building.

That is the result which the device was designed to accomplish, and no question is made of the successful operation of the plaintiff's machines. Commercial success is admitted, but the defendant urges that it may not be consulted in determining the issue of validity which is the only real subject of controversy.

The plaintiff manufactures and sells its machines in asserted conformity with the patent, and the defendant is a distributor of Zephyr machines, said to infringe. The latter resemble the Amico in all material aspects.

The defense was not openly conducted by the manufacturer of the Zephyr machines—at least no concession in the record was made to that effect. It would be difficult, however, to conclude that the dealer defendant was actually presenting the defense, although no finding on the subject will be made. What is found and concluded may be stated thus:

(a) The parties are correctly described in the pleadings, and the court has jurisdiction of them and the subject-matter.

(b) The defendant has sold one or more Zephyr machines within the jurisdiction of this court.

(c) The machines so sold by the defendant infringe the plaintiff's patent.

(d) The said patent is United States patent No. 1,723,940, issued to Hubert J. M. C. Krantz on August 6, 1929, which is now the property of the plaintiff, and is valid.

### Conclusion of Law

The plaintiff is entitled to the usual decree as sought in its amended bill of complaint, with costs.

There is but one claim in the patent, stated thus:

"A centrifugal machine comprising a rotatable basket, a casing for said basket, a support for said casing consisting of a plurality of stationary bearings spaced about the casing, lugs carried by the casing one beneath each of said bearings, and connecting links extending between the bearings and lugs respectively having universal pivotal connection with said lugs and bearings to permit easy lateral vibration of the casing with respect to the bearings, said bearings all being in approximately the horizontal plane of the centre of gravity of the basket and said lugs being spaced below said horizontal plane, means by which the basket is rotatably mounted within the casing consisting of a vertical shaft to the upper end of which the basket is fixed and a pair of vertically aligned bearings for the shaft carried by the casing spaced apart one above the other the upper bearing being disposed approximately at the centre of gravity of the basket in substantially the same horizontal plane as said first mentioned bearings, and drive means for the basket including an electric motor carried wholly by the casing and at the lower portion of the casing having connection with said shaft."

The combination so described will be seen to embody the following:

I. Rotatable basket.

II. (a) Casing, and support
    (b) consisting of:
        1. bearings exterior to the casing;
        2. lugs on the casing;
        3. connecting links between 1 and 2.

The bearings being in the approximate plane of centre of gravity of the basket I.

III. Rotatable mounting of basket I on a vertical shaft to which the basket is fixed.

The vertical shaft having upper and lower bearings carried by the casing, the upper bearing being approximately at the centre of gravity of the basket and in substantially the same plane as is above referred to under II (b).

IV. Drive means including an electric motor wholly carried by the casing, at lower portion of which the motor is connected with the shaft referred to in III.

The defense concedes that the art contains no combination of all the foregoing elements, but contends that the patent at best discloses a mere aggregation of familiar structures, and that no new force or property of matter can be shown to have its origin in the assembly, as distinguished from the several contributions to the final result which can be traced to the several elements of the structure.

Further, that the patent does not teach anything of value in establishing a planetary relation between the centre of gravity of the basket, the upper shaft-bearing, and

the upper link suspension. If it does, the patent has been anticipated anyway.

And finally, that the plaintiff's commercial structures, at least some of them, do not practise the patent, because the plane of the centre of gravity in order to embrace the upper link bearing and the upper shaft bearing is so ample of dimension as to lose its character as a plane, and become a zone.

These contentions have been examined with care, and will be discussed as briefly as possible.

This case resembles Smith v. Mid-Continent Inv. Co., 8 Cir., 106 F.2d 622, although of course the devices are widely unlike. The resemblance is thought to lie in the application of the aggregation aspect of the defense, and the importance of the relationship of certain elements in the device there examined.

■ It should be said that, so far as infringement is concerned, the defendant's position is that if validity be accorded to plaintiff's embodiment of the patent, the accused structures do infringe.

In his specifications the patentee reveals a centrifugal drying machine, composed of a metal basket having perforations in its sides, through which moisture contained in articles to be dried finds its way radially, as the basket is rotated.

Rotation is accomplished by a shaft affixed to the centre of the raised bottom of the basket (which is roughly cone-shaped) and the anchorage of the shaft is slightly above the vertical centre of the basket.

The shaft moves in two bearings, one of which is directly below the said anchorage, and the other at the bottom of the shaft, and below a pulley carrying an endless belt, which also encompasses a pulley in the same lateral plane, and which is rotated by an electric motor, and that in turn is supported by the casing next mentioned.

That casing is a metal structure which surrounds the basket, and is of a sufficiently greater diameter to provide for free rotation of the basket; the space between the sides and bottom of the basket and casing is ample for the accumulation therein of the moisture expelled from the contents of the rotating basket, and for free mechanical access.

The casing has an open top, and the basket a removable cover for obvious purposes.

The circular casing carries a housing for the motor, which housing is an integral part of the casing.

The casing also embraces, within its structure, the top and bottom shaft bearings to which reference has been made; this means that the bottom of the casing, viewed in elevation, presents a double aspect, as to its lower wall: Part of its central section branches up, to follow the cone-shaped bottom of the basket, and to include the upper shaft bearing, and then down to resume symmetrical union with its own periphery; the other part branches down in effect at a point near the start of the upward slope, in the form of a new member properly bolted into place, and the downward branch includes the lower shaft bearing which has been mentioned, and then continues upward to become integral, through bolting, with so much of the lower wall as has been last above described.

Thus both the shaft bearings are merged into and form a part of the casing which is supported at three points in its circumference upon lugs which are part of its structure, and which are carried by hanger links; the upper ends of these rest in cup-shaped spaces provided in vertical brackets, which are independent supports, resting upon the surface of the floor upon which the dryer is operated. The links are ball shaped at their upper and lower ends, and the upper ball rests in the cup-shaped portion of the said bracket, and the lower ball engages the under side of the lug, which is properly formed to receive it, and there is provision for lateral play of the links at both ends, and of course the balls can revolve in their respective cups.

Since the shaft carries the basket, and the casing carries the shaft and motor, it will be apparent that the floor brackets bear the entire weight of the assemblage through the medium of the links, and the action of the latter, when the dryer is in operation, necessarily determines the extent to which the brackets will be affected by the force so created; stated differently, the adequacy of the links to absorb, or dissipate, or assimilate the energy which is imparted to the basket and casing, as the basket and contents are rotated at high speed, determines the capacity of the brackets to support the instrumentality as a whole, without transmitting to the floor of the room, and thence to the walls of the building in which operations are conducted, a strain or stress which would be unacceptable.

The foregoing may be accepted for present purposes without great misgiving, because the arguments of both parties are in harmony as to so much of the mechanical embodiment of the patentee's disclosure.

The critical aspect of the patent is involved in the teaching that the unavoidable vibration of the structure may occur without undue injury to the parts, and that the extent thereof may be reduced or mitigated by maintaining the upper shaft bearing, the centre of gravity of the basket, and the upper link bearing, in substantially or approximately the same horizontal plane. That is an abbreviated form of expression to be found in the specification and in the claim, but is thought to be accurate.

The defendant says the teaching is unimportant, as is shown in part by the plaintiff's failure to embody it in its machines; and that Bryson No. 1,311,871 (granted August 5, 1919) taught all that it was important to know as to planetary relationships between the centre of gravity of the basket and link bearings, and that the relationship proclaimed by the plaintiff was known to the art (although no one seems to have deemed it worthy of mention) for many years prior to Krantz. That the Zephyr Company therefore was free to adopt what it might find attractive about an unpatented machine, for that is what plaintiff's devices must be deemed to be.

The Zephyr Company did not happen upon this design by accident. Its president, one Koplin, was employed by the plaintiff for two years as a salesman of its Amico machine and, when his contract expired in June of 1935, he established the Zephyr Company, and proceeded to build and sell the device here said to offend; of course if the plaintiff's product is not entitled to the protection of the Krantz patent, Koplin had the legal right to do what he did.

The principal art upon which defendant relies embraces Bryson No. 1,311,871, Jahr (German) No. 123,244 (1901), Krantz (Belgian) No. 308,266 (1923), and Krantz (Italian) No. 217,147 (1924), and sundry articles, publications, etc., to which reference will be made as is deemed necessary.

A brief statement may be interposed as to the operation of the plaintiff's machines: When articles to be dried are placed in the basket, there can be no symmetry of arrangement accomplished; that is to say, they are simply placed in the basket indiscriminately as to texture, weight, size and degree of moisture content. This mass constitutes an eccentric load, and as soon as the basket starts rotation, that eccentricity becomes more pronounced. So much is inevitable.

For reasons said to relate to the impossibility of securing revolution of the shaft upon its mathematical center, the first result of rotation is to cause the shaft to spin slightly off its vertical center; i.e., to vibrate as well as rotate; that tendency is accentuated by the radial pull of the centrifugal force which causes the moisture to move out through the perforations in the basket wall. The vibrations are manifested in part in a swinging movement of the casing which is borne by the links and their bearings.

Two centres of gravity are established which are said to counteract, and without pausing to identify their respective sites, the statement may be accepted that, as the speed of rotation is increased, a condition of stability seems to emerge, and at a sufficiently high speed the lateral movement of the entire structure subsides, and rotation is no longer attended by pronounced oscillation. The "critical speed" immediately precedes this latter condition, and it is highly desirable to pass through that stage of operation as soon as possible, for obvious reasons.

The magnitude of the forces which are set in motion when the machine is operating has been computed in the plaintiff's case, and there is no contradiction of the figures arrived at; the mechanical weight of all parts is about 3,000 pounds; the centrifugal force is computed on the load of materials being dried, the weight of which varies from 630 pounds wet to 405 dry, and at 750 R.P.M. each pound pulls laterally so as to exert a force of 400 pounds.

It will be gathered from these data, that the assimilation of the energy so created, in the suspension links of the machine, so as to prevent its taking effect upon the floor and walls of the building housing the operations, is no small achievement. That is what the proof shows the plaintiff to have done.

The defendant's main reliance is upon the disclosure in Bryson No. 1,311,871 (August 5, 1919) applied for November 13, 1916.

The structure of Bryson is so nearly like that of Krantz, that the differences merely should be noted:

A. The upper shaft bearing is not related, precisely or otherwise, to the upper link bearing.

B. There is no motor carried by the casing.

The strongest assertion that can be made for Bryson is that he teaches the upper shaft bearing in approximately the horizontal plane of the centre of gravity of the basket and its load (Claims 3, 5, 7, 8 and 9).

Also "casing supporting devices" (links?) connected to the casing in a horizontal plane substantially through "the middle portion of the basket"—whatever that means (Claim 1).

Also the upper shaft bearing approximately in a horizontal plane through the points of suspension on the casing, *i.e., the lower link bearings* (Claims 2 and 4).

The actual disclosure of this patent was lacking in clarity and precision, according to the defendant's expert, Mr. Ray, as developed on his cross-examination, but so much as is above stated should be deemed established for present purposes. The reason being that several of the defendant's general contentions are scarcely compatible with the deference which it appears to yield to Bryson.

For instance, the relation to the horizontal plane of the centre of gravity of the basket and load, on the part of the upper shaft bearing, is therein described as being approximate. If such an expression is acceptable in Bryson, it should be equally so in Krantz. Manifestly the plane in which the precise point would lie could be no more fixed than could the point itself; since the latter would vary as the texture, disposition and moisture content of the mass changed, it follows that the plane varies from instant to instant, and hence its location could be fixed only approximately or substantially, having in mind that neither the character nor function of the structure is that of an instrumentality of precision.

Again, the significance attached to the planetary relationship—such as it is—which Bryson taught, between his upper shaft bearing and "the points of suspension on the casing" (Claim 2), means either that this is an important feature of his patent, as urged for the sake of establishing anticipation, or that it is of no consequence to this controversy, as would result from yielding to defendant's effort to minimize the importance of Krantz's teaching of a planetary relation between his upper shaft bearing and his *upper* link bearing.

Admitting that there is nothing more freely adaptable than the apparatus of advocacy, it will be seen that both of these positions cannot survive.

The view presently held is that, to the extent that Bryson did teach the same plane approximately for his upper shaft bearing, the centre of gravity of the load, and his lower link bearing (which is not too clear), it must be viewed as a significant part of his disclosure, but that it did not result in an appropriation to him of all possible cognate planetary relationships; for instance, that of the first two named, and the *upper* link bearing, which Krantz stated in his specification as filed (page 2, lines 98 to 103) and in the one claim now before the court.

The suspension links and their functioning are clearly the most important aspects of the structure; therein lay the beckoning toward an ideal of attainment, and the departure that Krantz made from what was already understood, and perhaps articulated in Bryson, was something more than a mere mechanical expedient, in the opinion presently held. There is no evidence that structures in general resemblance to those under examination had been tinkered with in the effort to render them workable, which might support an argument that Krantz did merely what any designer would do who had tested many other expedients.

The constituency of the art is not the subject of more than passing contention, and no one asserts that it contained an assemblage embracing all of the elements found in the Amico machines.

Indeed the contrary is admitted, which reduces the assault upon Krantz to the conventional assertion that his contribution to what had been known and practised was so meager, in the patent sense, that he gained nothing from the grant of letters.

These attempts to minimize the contributions of Krantz are not convincing to this court; what he devised was a new alignment of the supporting links to the upper shaft bearing and the centre of gravity of the basket when operating, i. e., when loaded, and for aught that the evidence shows to the contrary, it was that relationship that made the drying machine work in restricted quarters, and there is no similar proof respecting an earlier device. In any case, it was thought worthy of

imitation by Zephyr, rather than the teaching of Bryson as discussed here or as revealed in the later Bryson patent, Defendant's Exhibit W.

▉ This view is not strictly compatible with the rejection of Krantz by the Patent Office in view of Bryson, which action was overcome by recasting several claims into one, and by adding emphasis to the office of the motor as an integral element of the casing, as a contributing factor to the better reduction and assimilation of vibration and oscillation.

That Patent Office action seems not to have been justified, if the views presently held are tenable.

The defendant relies also upon the German patent No. 123,244, of September 12, 1901, to Jahr. That patent contains no mention of any of the three elements which Krantz describes as being in substantially or approximately the same plane. The drawing is relied upon to show that the upper shaft bearing and the upper ball joints of the rods which support the casing are approximately in the same plane. If Jahr had said anything on the subject, it would be possible to conclude whether the showing referred to is anything more than an accident of draftsmanship, since it is not even a working drawing. Nor is there mention of the centre of gravity of the basket.

Likewise there is no electric motor mounted on the casing. Jahr does not anticipate Krantz.

Krantz Belgian No. 308,266 and Italian No. 217,147 patents, also discussed by defendant, have been examined in vain for any teaching anticipatory to the one in suit.

The Broadbent (English) Manufacturer's Catalogue (1922) and the cuts taken from "The Chemical Age" (1920, 1921) show that motors (steam engines) were carried by the casings shown. As to that position, it is deemed that Krantz taught nothing new.

The Alliott article (Defendant's Exhibit T 1924) may be quoted in part as follows: "Strictly speaking, the suspension rods should be attached to the pan (casing here) at the plane of the centre of gravity, in order that their pull should be as nearly as possible in the same line as the equal one due to the difference of the other two forces." Defendant urges that this is the Bryson teaching, which will be assumed. If so, it is not the disclosure of Krantz, and as success in operation has attended the latter, and nothing has been shown with respect to the operation of the Bryson machine, it cannot be thought that Krantz is wrong because of the above quoted views of Alliott. The other catalogues need not be the subject of comment, for enough has been shown to demonstrate that the combination described and expounded by Krantz has not been anticipated, and in respect of the planetary relationship between the upper shaft bearing, the centre of gravity of the basket, and the upper link bearing, there is no earlier showing in either letters patent, literature or trade catalogues.

▉ The argument that there is a mere aggregation of known elements, producing nothing new, has recently been alluded to in Toledo Pressed Steel Co. v. Standard Parts, Inc., 307 U.S. 350, at page 356, 59 S.Ct. 897, 83 L.Ed. 1334.

The terse statement, in denying validity to a torch combining a body old in the art and a cap borrowed from other fields, is this: "They performed no joint function. Each served as separately it had done. The patented device results from mere aggregation of two old devices, and not from invention or discovery."

Need Krantz survive the test so stated?

His machine is not new in any element; that is to say, a rotating basket, shaft, open top casing, suspension, and operating power, have been known and, as to some parts, assembled and used for years. The experience of users of models of earlier machines has not been imparted to the record, and nothing can be safely asserted in reference thereto. But this much is clear: The patentee does not claim novelty in the bringing of these elements together, but in doing so *in a certain relationship and structure* which were not only different from any previously described, but which have been shown to perform so successfully that a plausible inference is permissible to the general effect, that an improved and therefore better result has been obtained by Krantz than previously had been possible.

The philosophy of the patent has not been laid bare. It may even be doubted if those familiar with the construction of the Amico machines (nothing has been deposed for Zephyr) are really clear in their own minds as to why it is that the links and their bearings are able to absorb, or dampen as the patent says, the vibrations and oscillations which arise when the dryer is functioning. The patentee does not make the effort. He

454

merely states a pragmatic conclusion, and the plaintiff's testimony bears him out.

■ It is a familiar rule that a patentee is not required to know why his device works, so long as it does. That is this case.

The fact that the Krantz machine is a combination, but not a new one, is not the basis of his application, but that the combination is erected in a new relationship on the part of certain elements, and this leads to the conclusion that invalidity is not to be ascribed to the disclosure for the reason stated in the Toledo Co. case, supra, and others of similar character.

■ There remains the argument that the Amico machines, at least such of them as Zephyr copies, do not practise the Krantz patent, and therefore what would otherwise be characterized as infringement, merely amounts to copying an unpatented machine.

Viewed in the light of cold figures, the argument is more than plausible; it is searching. It means, for instance, that if the approximate plane, to which reference has been made, has been sufficiently abandoned in the commercial practise of the plaintiff, all the theoretical deference paid by it to the Krantz planetary relationship is pure affectation, and the fact is that, if the upper shaft bearing and either link bearing are in the general vicinity of the plane of the centre of gravity of the load, the best results are obtained, and that fidelity to the patent teaching is asserted merely for the purposes of litigation.

In applying that contention to the evidence, it is necessary to recall that the centre of gravity of the load is necessarily to be thought of as a fluctuating thing, which is highest when the moisture content is at its greatest, and gradually drops as the drying process develops. At any point on that vertical scale, it has a relationship to the structural nature of the basket, which latter depends of course upon the weight and character of the materials entering into its construction.

This means that the plane is always changing, and that, of necessity, elements which are exterior to it can be only substantially or approximately in it; i. e., they can at best be only near to it at any instant of time.

How near must they be, to conform to the teaching of Krantz? An answer to this question necessarily involves the realization that Bryson, in stating his claims 1 to 5, inclusive, 8 and 9, is careful to employ the words "approximately" and "substantially" in referring to the plane of the centre of gravity of the basket and its load. Thus it is clear that both patentees were aware that they were dealing with a relationship which is incapable of precise delimitation.

The question of whether the plaintiff is practising the Krantz patent cannot be satisfactorily answered by comparing the margin of departure from a precise relationship between what may be conveniently called the monuments of computation as exemplified in the Zephyr machines, and discovering whether that margin is greater or less than that of the Amico machines.

In other words, the mere fact that Zephyr adheres more closely to Krantz, in the mathematical sense, than does the plaintiff, fails to demonstrate that the Amico machines are themselves within the precincts established by Krantz.

Upon that question, as in all others of interpretation and construction, perhaps a difference of opinion is inevitable. It is here the view, that the Amico machines, some models of which reveal as much as a 4.3 inch variation between the plane of the centre of gravity of the wet load, and the upper link, or upper shaft bearing, and as much as a 4 inch variation between the horizontal level of those two bearings, nonetheless "substantially" or "approximately" maintain the general planetary relationship, to establish adherence to the teachings of the Krantz patent.

Robins v. Wettlaufer, Cust. & Pat.App., 81 F.2d 882, 893, is relied upon by plaintiff in arguing this point. That opinion discusses the authorities touching the place which the words "substantial" and "substantially" have in patent claims, and the effect to be given to them, and the conclusion therein announced, with reference to a variation of 7 inches in the drive shaft of a sand screening device from the center of gravity of the frame, the claim reading that the drive shaft should be "substantially coincident" therewith, is couched in the following language, which is appropriate to this litigation:

"We conclude, therefore, that it cannot successfully be contended here that 'substantially coincident with' or 'close to' means 'coincident with' or 'at.' To so hold would be to destroy the claims of the patent. If the actuating shaft be close enough to the center of gravity of the frame so that the

objects of the invention are accomplished and its proposed new and useful results attained, then the shaft may be held to be 'substantially coincident' with the center of gravity.

"Whether this be true can only be ascertained in the actual operation of the device. In the case before us, we are convinced that the greater weight of the credible evidence shows that the Verplanck machine successfully operated to produce the new and useful results of the subject-matter of the counts of the interference, and that it satisfied the same, and that the element which is the issue in this case contributed to that result. The party Robins, therefore, should be awarded priority."

From all of the foregoing considerations, it follows that the plaintiff has sustained its burden of proof, and the usual decree will be awarded to it, with costs.

If additional findings are desired, they may be settled with the decree.